IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| AMANDA BAXTER, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-00804-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| DON MANAGEMENT, LLC, JOHN | ) | |
| MAGLIOCCA, AN INDIVIDUAL; | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION**[1]

Cynthia Reed Eddy, United States Magistrate Judge.

## I.     INTRODUCTION

This lawsuit was initiated by Plaintiff Amanda Baxter ("Plaintiff") and sets forth claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq*. Plaintiff alleges disparate treatment under the PDA and hostile work environment under Title VII against Defendant DON Management, LLC ("Defendant DON Management"). Plaintiff also alleges pregnancy discrimination and hostile work environment under the PHRA against Defendant DON Management and Defendant John Magliocca ("Defendant Magliocca").

---

[1]     All parties consented to jurisdiction before a United States Magistrate Judge, and so the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

1

Presently before the Court is Defendant Magliocca's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 15). The motion is fully briefed and ripe for disposition. (ECF Nos. 16, 25, 26). The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

For the reasons below, Defendant Magliocca's motion to dismiss is granted.

## II.      BACKGROUND

In July 2019, Defendant DON Management hired Plaintiff as a customer service representative. Compl. (ECF No. 1) ¶¶ 7, 8.  Defendant Magliocca was her immediate supervisor. *Id*. At all times relevant to the allegations, Plaintiff contends Defendant Magliocca was an owner of Defendant DON Management and authorized to act on its behalf. *Id*. ¶ 20.

In February 2020, Plaintiff notified Defendant Magliocca that she was pregnant and had an October delivery due date. *Id*. ¶ 9. Plaintiff claims that after Defendant Magliocca heard this, he scolded her and stated that "October was enrollment season" and asked how long she would be on maternity leave. *Id*. According to Plaintiff, Defendant Magliocca frequently complained to other employees that Plaintiff's "pregnancy would force the company to hire a replacement" and that he would no longer hire women because of their unreliability. *Id*. ¶ 10. Plaintiff asserts that Defendant Magliocca inappropriately questioned her pregnancy and never discussed a pregnancy accommodation. *Id*. ¶ 11.

In early July 2020, Defendant Magliocca told Plaintiff that she needed to pass an insurance test to remain in her current role, but that it could wait until after her maternity leave. *Id*. ¶ 12. Later that month, Defendant Magliocca told Plaintiff she immediately needed to complete and pass a practice insurance test; Plaintiff completed the test but failed it. *Id*. ¶¶ 13, 14.

On July 30, 2020, Defendant Magliocca asked Plaintiff if she wanted to transfer to Defendant DON Management's compliance department. *Id*. ¶ 15. Plaintiff refused because of its $4.00 per hour pay decrease. *Id*. According to Plaintiff, Defendant Magliocca next stated she had to transfer because she failed the practice insurance test. *Id*. He informed her that Defendant DON Management would otherwise terminate her employment and deny her unemployment compensation benefits. *Id*. On August 24, 2020, Plaintiff transferred to Defendant DON Management's compliance department and became a compliance assistant. *Id*. ¶ 16.

Plaintiff alleges Defendant Magliocca fabricated the reasons for her transfer to the compliance department. *Id*. ¶¶ 17-19. For instance, he told Defendant DON Management's employees that Plaintiff was "unhappy at work" and "wanted out of the insurance business completely." *Id*. Plaintiff asserts that Defendant Magliocca's goal was to replace her with a childless, non-pregnant employee. *Id*. ¶ 19.

### a. Administrative Exhaustion

On September 2, 2021, Plaintiff's then-counsel filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and explicitly listed the address and phone number of "DON Management, LLC" and "DON Insurance Agency, LLC" and named them as "respondents."[2] (ECF No. 25-2) at pp. 3-4. On that same date, Plaintiff dual-filed it with the Pennsylvania Human Relations Commission ("PHRC").[3] *Id*. at p. 2.

---

[2]     The EEOC Charge of Discrimination should contain "[t]he full name and contact information of the person against whom the charge is made, if known (hereinafter referred to as the respondent)." 29 C.F.R. § 1601.12(a)(2).

[3]     For purposes of this Memorandum Opinion, Plaintiff's EEOC Charge of Discrimination—which was dual-filed with the PHRC, is collectively the "dual-filed EEOC Charge."

The EEOC's Charge of Discrimination form included the following instruction: "[i]f more than two [respondents], list under PARTICULARS." *Id*. at p. 3. Plaintiff's dual-filed EEOC Charge "particulars" stated *in toto*:

> DON Management, LLC and DON Insurance Agency, LLC, are both listed as Respondents in this matter because it is believed that both entities are liable under a theory of joint-employer liability (i.e., both companies had influence and authority over the terms and conditions of Amanda Baxter's employment). The Respondents will be collectively referred to as "DON" in this Charge.

> When Baxter notified DON that she was pregnant in February 2020, her supervisor, John Magliocca, immediately complained that her pregnancy would affect business and asked how long he would be out on maternity leave. Magliocca followed this by openly proclaiming that he would no longer hire women with young kinds because he could not rely on them. From there, Magliocca began to treat Baxter differently from other employees at DON who were not pregnant. For instance, on a near daily basis, Magliocca would have the following interaction with Baxter: Magliocca would chastise Baxter for being pregnant and ask her if she really needed to take all her maternity leave. Magliocca reminded Baxter that if she missed open enrollment season, he would have to hire someone to replace her. When Baxter stated that she intended to take all her maternity leave, Magliocca would yell at her before storming away.

> In July 2020, Magliocca told Baxter that she would need to obtain her Property and Casualty license to remain at her job. This alleged work requirement, however, was not necessary for Baxter to perform her job. It also was not a company-wide requirement, but instead, a sham requirement that Magliocca created to force Baxter out of her job. On July 14, 2020, Magliocca told Baxter that she would have to obtain her Property and Casualty license prior to returning from maternity leave in January 2021. Two days later, on July 16, 2021, Magliocca told Baxter that he was changing his mind and said that if Baxter did not take and pass a practice test for her Property and Casualty license that day, she would be replaced. Since Baxter had no time to prepare for this practice test, she failed. One month later, on August 24, 2020, Magliocca forced Baxter to transfer positions after he had hired someone else to replace her. Baxter was specifically told by Magliocca that she had to transfer positions because she failed her practice and Property and Casualty test on July 16, 2020. In addition, Magliocca told Baxter that if she refused the transfer, she would be fired and he would make sure that she would be denied unemployment compensation benefits.

> On July 19, 2021, Baxter spoke with a DON executive, who informed her that Magliocca had told DON that Baxter had transferred positions because she was unhappy in her former department at DON. That same week, Baxter also spoke with a representative from DON's Human Resources Department, who informed

Baxter that Magliocca had told DON's HR Department that Baxter wanted out of the insurance business completely. Neither individual was aware that Magliocca had transferred Baxter due to a failed practice test. Moreover, July 19, 2021, was the first day that Baxter was aware that her forced transfer to another department within DON was orchestrated by Magliocca and was done for reasons other than the failed practice test.

For all the reasons stated above, DON and Magliocca have violated numerous federal and state laws for which Baxter seeks relief and submits this Charge of Discrimination.

*Id*. at pp. 2-3.

On February 13, 2023, the EEOC issued a "right-to-sue" letter. (ECF No. 15-2).

On May 11, 2023, Plaintiff filed the operative three-count Complaint alleging disparate treatment under the PDA and hostile work environment under Title VII against Defendant DON Management (Counts I and II); and pregnancy discrimination and hostile work environment under the PHRA against Defendant DON Management and Defendant Magliocca (Count III).

Defendant Magliocca now moves to be dismissed with prejudice.

## III.    STANDARD OF REVIEW

a.    Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. Under Fed. R. Civ. P. 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This " 'does not impose a probability requirement at the pleading

stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). Yet a court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

The plausibility standard is not like a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 556) (internal citations omitted).

When considering a Fed. R. Civ. P. 12(b)(6) motion, the court's role is limited to determining whether a plaintiff has a right to offer evidence in support of her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately

prevail. *Scheuer*, 416 U.S. 232. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

If a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, then the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Even so, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached, without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004), *as amended* (Mar. 8, 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.    DISCUSSION

Defendant Magliocca maintains that Plaintiff's dual-filed EEOC Charge did not identify him as a respondent because, until this instant Complaint, he was unaware of the EEOC's administrative proceedings as well as the potential litigation under the PHRA. (ECF No. 15) ¶¶ 8, 10, 13. He argues that not only did Plaintiff fail to exhaust her administrative remedies as it relates to him—but that also the *Schafer* and *Glus* exceptions support his dismissal with prejudice. (ECF No. 16) at pp. 6, 7 (citing *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 245 (3d Cir. 1990) and *Glus v. G. C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *cert. granted, judgment vacated* on other grounds *sub nom.*, *Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co.*, 451 U.S. 935 (1981)). In response, Plaintiff maintains that Defendant Magliocca was a named respondent and, in support, cites Plaintiff's dual-filed EEOC Charge's particulars, "DON and Magliocca have violated numerous federal and state laws for which Baxter seeks relief and submits this Charge of Discrimination." (ECF No. 25) at p. 4.

Plaintiff also maintains that the dual-filed EEOC Charge's particulars sufficiently identified Defendant Magliocca as a respondent but that the EEOC otherwise failed to serve or provide him with notice. *Id*. at p. 7.

These arguments are addressed below.

     a.   <u>Administrative Exhaustion: the EEOC Charge of Discrimination Dual-Filed with the PHRC</u>

Before bringing a civil action in court, an employee-plaintiff alleging violations of the PHRA must exhaust administrative remedies. *See, e.g.*, *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (" '[P]ersons with [cognizable] claims under the [PHRA] must avail themselves of the administrative process of the [PHRC] or be barred from the judicial remedies authorized in the [PHRA].' ") (quoting *Vincent v. Fuller Co.*, 616 A.2d 969 (Pa. 1992)). Under the PHRA, if the employee-plaintiff files a charge with the PHRC alleging unlawful discriminatory practice, then it "shall state the name and address of the person, employer, . . . ." 43 Pa. Stat. Ann. § 959(a).

That aside, the PHRC and the EEOC—under a work-sharing agreement, seek to minimize duplicative investigatory efforts such that each agency waives its rights to initially review a "dual-filed" discrimination charge first filed with the other agency. *Woodson*, 109 F.3d at 925–926 n.12; *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523 (W.D. Pa. 2010) (explaining that the EEOC, as the PHRC agent, can receive a charge that otherwise needed to be directly received by the PHRC because of the work-sharing agreement); *see, e.g.*, *Todora v. Neshannock Twp. Sch. Dist.*, No. CV 16-647, 2016 WL 6433163, at *3 (W.D. Pa. Oct. 31, 2016) (recognizing that when a plaintiff timely submits a charge with the EEOC, and requests it be dual-filed with PHRC, the charge is deemed filed with the PHRC).

Under Title VII and the PHRA, the EEOC and the PHRC discrimination charges require— among other things, the employee-plaintiff to name all persons or employers, including

corresponding addresses, alleged to have committed discriminatory acts. *See* 42 U.S.C. § 2000e-5(f)(1) and 43 Pa. Stat. Ann. § 959(a). For example, "[a] charge is sufficient when the [EEOC] receives from [the employee-plaintiff] a written statement sufficiently precise to identify [the respondents], and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). But the EEOC discrimination charge "may be amended [by the employee-plaintiff] to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *See id*.

Of relevance, after the EEOC Charge of Discrimination is reviewed, the EEOC sometimes issues a "right-to-sue" letter. *See* 42 U.S.C. § 2000e-16 and 29 C.F.R. § 1601.18(b). In such case, the administrative remedies are exhausted because there is "final agency action." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)); *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116 n.14 (3d Cir. 2003) ("[A] 'right-to-sue letter' will follow an exhaustion of agency remedies; notice of the latter being the actual prerequisite to a Title VII lawsuit."). "[T]he purposes of the exhaustion requirement are to promote administrative efficiency, respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (internal citation omitted).

Plaintiff's argument that Defendant Magliocca was sufficiently identified as a respondent in the dual-filed EEOC Charge's particulars is unavailing. Under the PHRA, to fully exhaust an alleged aiding and abetting claim—for example, claims providing for individual liability, an employee-plaintiff must specifically name the respondents in the administrative charge, even if dual-filed. *Carroll v. Comprehensive Women's Health Servs.*, No. 3:16CV1509, 2017 WL 194285,

at *3 (M.D. Pa. Jan. 18, 2017) (citing 43 Pa. Stat. Ann. § 959). Plaintiff's dual-filed EEOC Charge,

filed by her then-counsel, explicitly listed Defendant DON Management and DON Insurance

Agency, LLC as "respondents" and stated the following in the particulars,

> *DON Management, LLC and DON Insurance Agency, LLC, are both listed as Respondents* in this matter because it is believed that both entities are liable under a theory of joint-employer liability (i.e., both companies had influence and authority over the terms and conditions of Amanda Baxter's employment). *The Respondents will be collectively referred to as "DON" in this Charge.*

(ECF No. 25-2) at pp. 2-3 (emphasis added). And despite available opportunities, the dual-filed

EEOC Charge was never amended; for instance, to clarify that Defendant Magliocca should be

considered a respondent. 29 C.F.R. § 1601.12(b).

After this lawsuit was filed, Defendant Magliocca requested the records of "Amanda

Baxter v. DON Management, DON Insurance, et al.[,]" from the PHRC,  but it denied his request,

on August 11, 2023, for reasons that "[he was] a third-party requester . . . [and] *not* a named

Respondent in the referenced case." (ECF No. 15-5) at p. 2 (emphasis added).

Although Plaintiff received the EEOC's final agency action, administrative exhaustion

fails to apply to Defendant Magliocca. He was not identified as a respondent in Plaintiff's dual-

filed EEOC Charge as confirmed by the PHRC. (ECF No. 15-5) at p. 2. As a result, whether this

action proceeds against him appropriately depends on the *Schafer* and *Glus* exceptions. This is

discussed next.

### b.  Administrative Exhaustion: Excepted by *Schafer* and *Glus*

Defendant Magliocca maintains he was unaware of, and never served with, the dual-filed

EEOC Charge, including that Plaintiff raised claims and complaints of his conduct before an

administrative agency. (ECF No. 16) at p. 3. Defendant Magliocca also maintains that at the time

of the EEOC proceedings he never had ownership interest in either Defendant DON Management or DON Insurance Agency, LLC. (ECF No. 15) ¶ 9.

A defendant that is otherwise unidentified as a respondent in the EEOC Charge of Discrimination may still be sued by the employee-plaintiff if the defendant "received notice and [] share[s] commonality of interest with the [identified respondent(s)]." *Schafer*, 903 F.2d at 252 (citing 42 U.S.C. § 2000e-5(f)(1)); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.") (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). Given a defendant's absence from the EEOC administrative proceedings, *Glus* "enumerated four factors that should be considered in determining whether the district court had jurisdiction under Title VII":

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC [charge]; 2) whether, under the circumstances, the interests of a named [party] are so similar [to] the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus*, 629 F.2d at 251. *See Kelly*, 94 F.3d at 105 ("While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, . . . its courts nevertheless generally interpret the PHRA in accord with its federal counterparts[.]"). Even so, this "four-pronged test is not a mechanical one; no single factor is decisive." *Id.*

Defendant Magliocca's name was included in Plaintiff's dual-filed EEOC Charge's "particulars," but he was not identified as a respondent. Instead, the dual-filed EEOC Charge exclusively stated, "DON Management, LLC and DON Insurance Agency, LLC, are both listed as

Respondents in this matter because it is believed that both entities are liable under a theory of joint-employer liability (i.e., both companies had influence and authority over the terms and conditions of Amanda Baxter's employment)." Under the EEOC and the PHRC discrimination charge requirements, an employee-plaintiff must specify the respondent(s). But the dual-filed EEOC Charge unreasonably failed to include Defendant Magliocca as a named respondent.

Next, there is no commonality of interests between Defendant Magliocca and the respondents—Defendant DON Management and DON Insurance Agency, LLC. Defendant Magliocca was last employed with Defendant DON Management in January 2021 and with DON Insurance Agency, LLC in August 2021.[4] (ECF No. 16) at pp. 8, 11. And Plaintiff's dual-filed EEOC Charge was filed after, on September 2, 2021. (ECF No. 25-2). Relatedly, Defendant DON Management and DON Insurance Agency, Inc.'s submitted EEOC Position Statement provided that "Mr. Magliocca is no longer affiliated with DON Services and, therefore, Respondent has no ability to offer a response on behalf of Mr. Magliocca."[5] (ECF No. 15-4) at p. 5. Importantly, Plaintiff now sues Defendant Magliocca in his individual capacity which is a "critical consideration." *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 482 (E.D. Pa. 2013). Defendant

---

[4]     Defendant Magliocca cites his attached exhibits from the Pennsylvania Department of Labor & Industry Unemployment Compensation Benefits as confirmation of his unemployment dates with Defendant DON Management and DON Insurance Agency, LLC. (ECF No. 15-3). Additionally, his attached exhibits include Defendant DON Management's submitted EEOC Position Statement—dated January 24, 2022: "Defendant Magliocca is no longer affiliated with [Defendant DON Management or DON Insurance Agency, LLC]. . . ." (ECF No. 15-4) at p. 5. For purposes of this Memorandum Opinion, the Court takes judicial notice of these documents to establish Defendant Magliocca's dates of last employment affiliation with Defendant DON Management and DON Insurance Agency, LLC. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

[5]     The submitted EEOC Position Statement asserts that Defendant "DON Management, LLC" and "DON Insurance Agency, LLC" are improperly identified and should be known as "DON Services." (ECF No. 15-4) at p. 3. For purposes of this Memorandum Opinion, Defendant DON Management and DON Insurance Agency, LLC will still be called such.

Magliocca, not Defendant DON Appliance or DON Insurance Agency, LLC, would be personally liable if Plaintiff's aiding and abetting claims succeed on the merits. So he lacks sufficient commonality of interest with Defendant DON Appliance and DON Insurance Agency, LLC, such that Plaintiff should be excused for failing to specifically name Defendant Maligocca as a respondent. *Hills*, 978 F. Supp. 2d at 482.

Defendant Magliocca also asserts that the failure to name him as a respondent causes prejudice. (ECF No. 16) at p. 9. He specifically asserts that he now must defend against time-barred claims—which occurred almost three years ago. *Id.* In this regard, he reiterates that he was deprived of pre-suit negotiations for resolution and out-of-court conciliation efforts. *Id.* Defendant Magliocca was prejudiced because he did not receive notice of the individual liability claims via the administrative process. *See e.g.*, *Meyers v. California Univ. of Pennsylvania*, No. 2:12-CV-1258, 2013 WL 795059, at *13 (W.D. Pa. Mar. 4, 2013) ("[the defendant] was actually prejudiced due to his absence from the administrative process because he was deprived of the opportunity to informally resolve the claims [p]laintiff now asserts."); *see also Lightcap-Steele v. KidsPeace Hosp., Inc.*, No. CIV.A. 05-02578, 2006 WL 1147476, at *7 (E.D. Pa. Apr. 27, 2006) ("[actual prejudice, for instance, includes] the loss of the opportunity to clear [one's] name of allegations of wrongdoing before experiencing the arguable ignominy of being individually named in a public law suit.").

Plaintiff's failure to exhaust her administrative remedies as it relates to Defendant Magliocca is not excepted by *Schafer* and *Glus*. The dual-filed EEOC Charge explicitly identified the respondents as "DON Management, LLC and DON Insurance Agency, LLC." Moreso, as of January 24, 2022, Plaintiff was presumably aware of Defendant DON Management's submitted EEOC Position Statement which clarified that Defendant Magliocca was no longer affiliated with

it, and it had "no ability to offer a response on behalf of Mr. Magliocca." Such detail was notified

well before February 13, 2023, when the "right-to-sue" letter was issued. But still no amendment

to the dual-filed EEOC Charge took place.

Defendant Magliocca is thus dismissed with prejudice.[6]

## V.     CONCLUSION

For these reasons, Defendant Magliocca's motion to dismiss (ECF No. 15) is granted.

An appropriate Order follows.


Dated: March 28, 2024                                    BY THE COURT:

                                                        s/Cynthia Reed Eddy
                                                        Cynthia Reed Eddy
                                                        United States Magistrate Judge


cc:     Counsel of Record
        (via ECF electronic notification)

---

[6]     The allegations against Defendant Magliocca for individual liability under the PHRA appear to last occurred around July 2021. (ECF No. 25-2) at pp. 3-4. As a result, Defendant Magliocca's dismissal is unfortunately with prejudice.

> Like Title VII, the PHRA establishes two limitations periods: first, the administrative charge must be filed by a complainant with the PHRC within 180 days of the alleged discrimination, *see* 43 [Pa. Stat. Ann.] § 959(h); second, a court action must be filed within two years of the date that the PHRC gives the complainant notice of the closing of the administrative [charge]. *See* 43 [Pa. Stat. Ann.] § 962(c)(2). As in Title VII, these periods represent the complete legislative determination as to the appropriate timing provisions under the PHRA. There is no basis for a court, particularly a federal court sitting in diversity, to engraft any additional limitations periods as gap-fillers. There are no statutory gaps to be filled.

*Burgh*, 251 F.3d at 475.